Will you call the next case please? Mr. Lynn. Mr. Lynn, just so you know, Justice Schmidt is the presiding justice, and so that's why I switched the nameplates out of respect for his position. I know you're not from Illinois. Thank you, Your Honor. May it please the Court, my name is Tim Lynn, admitted pro hoc vicee to this Court, appearing on behalf of Roland Campbell and Melody Campbell, who are the appellants in this matter. The appellants have appealed in order, dismissing the third amended complaint in this matter with prejudice on the grounds that the claims were barred by the doctrine of raised judicata. Now just to summarize briefly the underlying cases, we have the first case, which is referred to as Hoffman 1 in the appellant's brief, which was an unlawful detainer action evicting Melody and Roland Campbell from what is referred to as a poli property in the appellee's brief. The second case was a case filed by the appellees in this matter, Hoffman and International Supply, seeking the enforcement of a guarantee loan that was signed in obtaining a loan from the bank to try and fund this East Peoria Civic Center project. In that case, affirmative defenses were filed by John Miller, who was a separate defendant, and affirmative defenses stating a fraud in the inducement of the contracts, and a counterclaim was filed on behalf of John Miller, who Melody and Roland Campbell tried to join in, but that motion was denied. And that counterclaim alleged fraud in the inducement. Was that denied or just not ruled upon? You are correct, Your Honor. It was never ruled upon. So one way or the other, the appellants were never allowed to join in on that cross-complaint. Now the instant case, appellants have filed a suit for three causes of action. One is a breach of duty of loyalty, one is a breach of fiduciary duty, and another is an intentional interference with economic perspective claim. And these are based on actions that they've alleged that the defendants, or Hoffman and International Supply, have engaged in sabotaging the success of this East Peoria Civic Center project. Because unbeknownst to my client at the time, Mr. Hoffman had put himself in a position where he gained more from the failure of the project as opposed to its success. Now both files, thankfully, the parties have agreed to a lot of things. One is we agree that the River Park case regarding a race judicata is the applicable law here. We agree that two of the requirements set forth in the River Park case are met. One is a final judgment has been rendered, and two, there is an identity of parties in this matter with the Hoffman II matter. The point of contention is that the third requirement is whether there is an identity of cause of action. And within there, there's two points of contention. One is there is no identity of cause of action because the action that the instant case, the facts that give rise to plaintiff's relief in the instant case are different from those in Hoffman II. The second point of contention is whether the pleading of this affirmative defense for fraud in the inducement somehow precludes the appellants from raising the secondary claim for breach of fiduciary duty and intentional interference claims. Now River Park adopts the transactional test and states, in determining whether claims are part of the same cause of action, we consider the claims in factual rather than evidentiary terms. We must examine the facts that give rise to the plaintiff's right to relief and assess whether they are linked in a manner such that they are part of a single transaction. The factors relevant to ascertaining whether they are so linked include their relation in time, space, origin, and motivation. And whether they form a convenient trial unit and whether their treatment as a single unit conforms to the party's expectations and business usage or understanding. Now the case that, the clode case that is cited by appellees in their briefs, the courts found that there was an identity of cause of action in a claim one for a doctor's failure to order a C-section prior to and during delivery of a baby, which ultimately was alleged to cause some birth damage, some injury to the baby. And in that clode case, the second lawsuit involved some other medical malpractice, failure to open pathways properly, which occurred after or shortly after the delivery of the baby. Now the court found there to be similarities in time, in space, in those two causes of actions. And they found that from the standpoint of the medical community, that it made sense that this was all one action because generally when someone gives birth, they're taken care of before, during labor, during delivery, and after postpartum care. So it made sense it conformed with the medical community. In this case, we don't have that. We have essentially a claim for conduct that Mr. Hoffman engaged in sabotaging the East Peoria Civic Center project. And this is not just the fraud claims that's stated in inducing the contract. This goes to the conduct of sabotaging any fundraising efforts, sabotaging any efforts to especially this CycleNation event, which was one of the biggest fundraising events for this project. There's allegations that Mr. Hoffman, as a partner, did not basically saw to it that there would be no funding for this event, and that the event would fail in funding the project. These are the facts that give rise to the appellant's recovery in this instant cause of action. There's no cause of action for fraud. There's no cause of action seeking recovery for whatever damages may have occurred as a result of being fraudulently induced into this contract. When you look at a transaction, if you look at the only similarities between the two cases is that they involve this East Peoria Civic Center project. But when you look at the facts that go into or that give rise to these two claims, they're separate in time and space. And it really doesn't make sense, business sense, to require appellants to file a claim or at that time to file these claims when Hoffman 2 had been initiated. With that in mind, I think that's pretty much the main contention of this matter. And the appellants seek the reversal of the order dismissing the case with prejudice and that this matter be remanded. We're talking about one business deal that went south, in essence, right? Yes. So these are all claims arising out of however why this business deal went south and who's to blame for it? In the instant case, yes. The prior Hoffman 2 case was strictly for the enforcement of these guarantee agreements that were signed by Roland Campbell, Melody Campbell, and the third defendant, John Pritchard. Those were signed prior to really any work in developing this project. They were assigned to obtain the loan for funding, the initial funding of this project. So the fact that it is one and this spans a significant amount of time. It wasn't one day and then the next day. It spans a significant amount of time. So when you look at transaction as the whole East Peoria Civic Center, that would be a very broad description of a transaction in my opinion. But when you look at, say, the transaction of that contract, of obtaining that loan, prior to any efforts had been made to raise funds and to develop this as East Peoria Civic Center project, I think these claims arise from different transactions. Your amended complaint alleges a breach of fiduciary duty and a breach of loyalty. What gives rise to the breach of those two duties? Isn't it the four separate agreements that were construed by the court earlier in the previous appeal as one agreement? Well, the theory I believe in the complaint was that they were partners. That as partners, they were working together for the success of this venture. And then at some point, Mr. Hoffman was able to take, assume, or purchase the rights to this bank loan, which allowed him to foreclose on the Povey property. But you're alleging a breach of duty that arises out of the very contracts that were considered very carefully by Justice Carter and the other panel members in the previous appeal. Yeah, I guess the duty comes from, or the duty that was breached is more from the partnership, the relationship as partners in this business venture. And that Mr. Hoffman had a duty to at least disclose at the time. In Mr. Hoffman, or Mr. Miller's answer in that previous lawsuit, I think you're calling it Hoffman 2, but I call it 06-MR-35, Mr. Miller actually alleges, it's on appendix page 21 in Appellee's brief, he alleges in paragraph 5, just above the provisions for his counterclaim, that defendant, with respect to certain provisions in the promissory notes, caused the notes to become due, thereby depriving defendants of their opportunity to satisfy the promissory notes and discharge him. That's exactly what you're alleging here in this lawsuit. So why couldn't you have raised it in your answer in the previous litigation? Well, I think that's not necessarily the test. The test is whether, when you look at the facts, whether it was one transaction. It doesn't take into account, say, whether defendants or appellants knew of these claims. There was a fraud in the adducement, pleaded as an affirmative defense. But at that time, whether my clients or Campbell's knew this was going on, I don't know. But I think when you look at the facts that give rise to these two claims, to the breach of warranty claim, guarantee claim, I'm sorry, and the claims that are alleged in the instant case, they involve different facts. This case is a prequel, I guess you would say, to the Hoffman 2 case, in that they're separated by time, space, and the underlying facts are just separate and distinct. I have no further arguments if there's no further questions. All right. Thank you, Mr. Lin. I don't want to mispronounce your name. Is it Covert? Yes, Covert. Yes, that's what I thought. May it please the Court, my name is David Covert, and I represent the appellees in this case, which are E. Lee Hoffman and International Supply Company. As was pointed out by Campbell, we've got three cases which I feel should be integrally discussed and reviewed because it all has to do with whether or not we have an identity of causes of action. Hoffman 1, which was defined by Campbell in the brief, involves a case where Hoffman was considered the borrower of a large amount of money because he was the money man guaranteeing this loan for the benefit of Campbell and the others to develop this Peoria Convention Center. And the group of investors, Campbell and the others, were having difficulty making payments, and so there was a foreclosure filed, as is pointed out in the appellant's brief, by an SPCP company which bought the loan from Central Illinois Bank. And to stop the foreclosure, Hoffman paid them off. So then he declared a default to the Campbell group, and as there were quick claim deeds in escrow at the time as collateral security, told the escrow aide to give me the deeds, recorded the deeds, and then he began a lawsuit under Hoffman 1 to evict Campbell and the others. He paid them off and he actually was assigned the loan. Pardon me? He paid them off and he received, he was assigned the loan. Yes, he did. Yes. So he declared a default against the Campbell group. And then proceeded to foreclose. Yes, and went after them as a creditor, basically. So with regard to Hoffman 1, that basically relates to the default and whether Hoffman had something to do with the default or if he stood between the people to cause a default or stultify their efforts to possibly try to salvage this convention center. There was a case filed in federal court and there was a settlement, but did all the defendants sign off on the settlement that Mr. Hoffman negotiated? Your Honor, I don't know if they all signed off. I believe they had some risk possibly as borrowers. So it could have possibly been that they did not. We just don't know based on this. I just don't know. That's correct. So after the eviction took place, and in fact Campbell and those others did get evicted, there was a second case, the Hoffman 2 case that was referred to by the appellant in their brief, which was a suit on the personal guarantee. And that was against Miller, John Miller and Mr. and Mrs. Campbell. And as an outgrowth of that suit, Miller had filed a counterclaim alleging fraud on the part of Hoffman having to do with the procurement of that personal guarantee and then there was also an affirmative defense lodged by Miller and there was some reference to a two-year cure period that should have been infused in that. Well, one thing that's not really alluded to much in the appellant's brief, but we have this as Appendix A-22, the fact that Campbell actually took upon himself the counterclaim. In other words, he took as his, or hers also, the very counterclaim that Miller had filed and also the affirmative defense. So he had ample opportunity at that time to add another party, such as International Supply Company. He had ample opportunity to also include other causes of action because they are all integrally related to this default because one of the complaints by Campbell was that Hoffman did some things that were wrong, which caused her default, didn't allow us to cure the default, and he stood in the way of this development called the Peoria Convention Center. So he had the opportunity to bring it up in the first case, Hoffman 1, he had the opportunity to bring it up in Hoffman 2, but failed to do so. At least he brought the counterclaim, but just didn't expand it. Now, with regard to this instant case, that's the third, and that's how it was defined here, this is a third amended complaint brought by Campbell stating that there were torts, but there were torts alleged also in that counterclaim under Hoffman 2, but it's just an expansion of that, and really in terms of space and time, it would have been more appropriate to bring this up in Hoffman 1 because there was an allegation of default, so if Hoffman did in fact have something to do with their defaulting or their inability to cure, then that's when that sort of thing should have really been brought up, more common sense would have dictated that that would be the appropriate time for bringing up that particular argument, but they did not. So this current case arises from a single group or core of operative facts, which if taken together, we have all of these transactions, we have those four core agreements that Your Honor alluded to, we have negotiations that led up to that, and then we have issues regarding performance of those agreements, but it's taken together, it all has to do with the intent to develop the Peoria Convention Center. And I incited the Claude case, Claude v. West, to show a correlation between that case and the one we have at hand. In Claude, as was pointed out by opposing counsel, there were three things that occurred in this medical case. We had the labor, we had delivery, and then the postpartum issues. The first case that was brought was focused on the labor and delivery, but nothing about the postpartum. The second case that was brought, which was dismissed by the appellate court, involved the delivery and postpartum. The court stated that there was a continuous series of events that occurred here. We had the labor, delivery, and then the postpartum, and so that was the same core of operative events that we're referring to here in the case of Hoffman and Kammerer. Because likewise, if there had not been a default on the loan, then Hoffman would not have sued for eviction, and would not have also taken the deeds, become title owner, and gone through the eviction process. Had that not happened, Hoffman would not have filed the second suit, Hoffman 2, based upon the personal guarantee because there was no default. And further, had there not been that second suit, Hoffman 2, Miller would not have filed a counterclaim stating that my personal guarantee was effectuated by fraud, and that there's this two-year cure period. And also, then, Campbell would not have filed a motion in Lemony to join in and accept as his, or provide that his counterclaim would be the same as Miller, identical, and also the affirmative defense. That motion was never granted, correct? It was, Your Honor. I'm quite sure that was. You need to direct us to the record, the portion of the record where it was allowed. All right. Well, nevertheless, even if it was not, because I cannot stand here and state that it is a record. The fact is he asked for it. He had the opportunity, he was given the opportunity, he filed the motion in Lemony, and I... And as Justice O'Brien points out, my understanding of the record is that motion was never ruled on. If you know something different, please direct us to the record. I think I'll withdraw any reference to that, because I cannot say for certainty. So, in that case, then, he had the opportunity, and he expressed that opportunity, so he can't claim that he did it. And it had to do with the events that actually occurred during about the time of Hoffman 1. Now, if this was something that occurred after Hoffman 2, then I could understand that, because there would be no way that you could foresee the future. But this all had to do with things that occurred before Hoffman 1 and Hoffman 2. The trial court had carefully explained its reasoning and its decision that, for the reason we're here today, and correctly interpreted the River Park versus City of Highland Park case. The River Park court had adopted the transactional test, which relates to the identity of causes of action, which we have today. That's basically the sole issue we're here today for, is the identity of causes of action, which is a more liberal or broad interpretation on how to identify causes of action. The court is not looking at different causes of action, what types of causes of action they might be, or the different evidence, but the fact that all the claims arise from the business and financial relationship between the parties, and which was over a substantial number of years. And that all had to do with the development of this Peoria Convention Center. Now, the trial court, in its order, specifically refers to the River Park case, stating that it employed the transactional test, and also in the court order, the judge stated that the claims of the plaintiffs in this case arise from the same core of operative facts as in this 06-MR-35, and could have been decided in the former case at least, at the very least, the Campbell group could have brought this up and then decided in that particular case. I do want to point out that the same attorney, Stephen Thomas, the attorney for the appellants here, who's not here today, represented Campbell in this, in the Hoffman II case, and is the one that prepared the motion in Lemony, requesting that the counterclaim of Miller and the affirmative defenses of Miller be that of the Campbells. So, Campbell would hardly be able to argue that he didn't know anything about this. He had the same counsel in both cases, and they brought up the tort of fraud and reference to this so-called two-year period. So, our position here is just that Campbell is just simply trying to take another bite at the app by bringing up more theories and to go after Hoffman with more things that he should have done in the first place, and then also to add another party, which would be International Supply Company. I don't mean to criticize you, but just for purposes of me being clear, I see Mr. Thomas' motion in Lemony, which is found in A22 of your appendix, to only request that they be allowed to join in the counterclaim and does not mention the affirmative defenses. I could be mistaken. Please. How does that impact your argument? Well, it would not impact it at all. There was a reference to the substance of the counterclaim was virtually identical to the substance contained in the defendant's first affirmative defense in that fraud and the inducement of equitable estoppel pleaded as affirmative matter therein. So, that's why I referred to the affirmative defense, because he sort of has it melded together. But for the reasons stated, they asked to join in the counterclaim. Yes. All right. Does that affect your argument at all? It is. It's a little bit muddy in the sense that he asked to be brought in as the counterclaim, but then there's some argument there requesting that the facts are identical to the affirmative defense. How would you respond to Mr. Lind's position that his client did not know of these facts at the time of Hoffman 1, based on this motion in Lemony? I would say that he knew more about these facts than anybody. And I have another question just for administrative purposes. Your client's name, last name, is spelled with one F and two F's. It's one F and an N's and two N's. All right. Thank you. Thank you. All right. Thank you, Mr. Colbert. Mr. Lind, some rebuttal. First of all, I just want to clarify, I don't have personal knowledge to know that Mr. Campbell did not know of these facts. I just raise that as an issue because I don't think knowledge of the facts or the fact that we could have or should have, those aren't part of the test that's set forth in the River Park transactional test. The River Park transactional test looks at the facts that give rise to these causes of actions and makes a decision as to whether there was a relation in time, space, origin, and motivation. Whether we could, whether Campbell could have or was late in filing a claim for fraud, it may go into some other form of maybe a summary judgment or statute of limitations determination, but I think under the River Park transactional test, that is not considered. It's a look at the circumstances surrounding the facts that give rise to these two specific complaints, these two specific lawsuits. The other issue I wanted to point out is, had Campbell filed this lawsuit first, would that, if these were a common nucleus of operative facts, or based on the same facts, Hoffman would be precluded from filing a later lawsuit for a breach of warrant, breach of this guarantee agreement. He would have to, if he had failed to file a counterclaim for the breach of guarantee, he would be precluded from filing a future lawsuit on these written agreements. Because if there is a finding that this is the identity of cause of action, that would be the necessary conclusion. These agreements were entered, as stated, prior to any development or fundraising process. These were signed without any knowledge of what would go on in the future. And in the cause of action, or in Hoffman 2, there was no factual determination or any evidence showing why the breach occurred. The judgment issued by, and the decision issued by Judge Corey simply states one paragraph, or I'm sorry, one sentence, that the business failed, the project failed. There was no determination as to why, as to whether there was any justification. So clearly the intent of that Hoffman 2 case was to strictly interpret these guarantee agreements and not go into the reasons behind the failure of this project. And I think, to me, that is evidence of the fact that these two are separate causes of actions. Thank you, Mr. Lynn, Mr. Colbert. And by the way, Mr. Lynn, I want to welcome you to Illinois and the Third Appellate District. I know what it's like to practice law a long way from home, so I hope you enjoy your brief stay here. Thank you. And if you got a minute before you have to go to the airport, there's an interesting piece of history right across the street, the statue where Lincoln and Douglas had their first debate. So you may or may not find that interesting. It's right across the street. Oh, is it? I was trying to Google that, actually, because there's so much history here. Walk out the front door and you'll see the park over there, and it's pretty interesting. So anyway, that being said, this matter will be taken under advisement. A written disposition will be issued. And right now we'll be in brief recess for a panel change before the next case. Thank you.